FILED

2021 NOV 10 PM 2:52

... DISTRICT COURT
... DISTRICT OF FLORIDA
... ..., FLORIDA

Ian Gimple
Plaintiff *in Propria Persona*
3211 Vineland Road #102
Kissimmee, FL 34746

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

George C. Young Federal Annex Courthouse, 401 West Central Boulevard, Orlando, Florida 32801

IAN GIMPLE

    PLAINTIFF

v.                            CASE NO. _____

SAVER LLC, dba ECONOMY-RENT-A-CAR

    DEFENDANT

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## UNDER AMERICANS WITH DISABILITIES ACT (ADA)

    Plaintiff sues the defendant for declaratory and injunctive relief under Title III of the Americans with Disabilities Act (hereafter "ADA") and alleges the following:

### INTRODUCTION

    The plaintiff brings this complaint to enforce Title III of the ADA, 42 U.S.C. §§12181-12189 as implemented under 28 CFR Part 36 (36.101 *et sequitur*), against the defendant SAVER LLC, dba ECONOMY-RENT-A-CAR (hereafter "SAVER").

    Defendant discriminates against individuals with disabilities in the full and equal enjoyment of their goods, services, facilities, privileges, advantages, and accommodations in violation of Title III of the ADA and its implementing regulation.

Defendant also retaliates against individuals who attempt to exercise their rights under the Americans with Disabilities Act.   Defendant has discriminated against the plaintiff based upon disability and has retaliated against the plaintiff for attempting to exercise and enjoy his rights under the ADA.

Defendant also maintains a policy in which each employee is instructed to act as if each of its members, invitees, employees, patrons and licensees have the disability of a contagious disease and are each a direct threat to everyone else; however, the defendant never conducts any individual assessment as required by law.  In fact, instead of complying with its own policies to "obey the law" and the law itself,  the defendant has an arrangement with local police to threaten to arrest invitees for trespass and other crimes for refusing the accommodation measures of wearing a mask, face shield, and social distancing in retaliation of the protected individual exercise his rights that are presumed by the very policies of the defendant itself.

Individuals with disabilities such as the plaintiff, including but not limited to individuals who are unable to wear a medical device (mask or face shield) or other contrivance over their faces that obstruct their vision, cause psychological distress  (anxiety or panic) or unnaturally restrict the amount of oxygen they breathe cannot be discriminated against, excluded or barred from entering the defendant's premises due to that person's underlying, pre-existing disabilities and/or medical conditions.

Specifically, Defendant has failed to ensure the accessibility of its premises located in Orange County, Florida at 8501 Parkline Boulevard, and as a result, the plaintiff has been prevented,  under threat of incarceration, from enjoying the services or taking advantage of the benefits offered through Defendant's retail establishment.

## PLAIN STATEMENT

Defendant is a public accommodation, a retail car rental store.  The plaintiff is a qualified individual with a disability that substantially limits his ability to engage in one or more major life activities.  The defendant has unlawfully discriminated against the plaintiff by regarding him as disabled with a contagious disease and retaliated against him by cancelling his paid contract for a rental car based upon disability, by falsely claiming that plaintiff was trespassing and threatening plaintiff with arrest or incarceration, and by harassing and intim-

idating him in retaliation for the plaintiff attempting to exercise or enjoy his rights under the ADA.

The defendant has undertaken such discriminatory conduct as a matter of a new business policy that purports to protect the public from an unproven contagious disease without any legal or moral duty, in violation of state public health policies.

The defendant <u>regards the plaintiff as having a disability</u> (contagious disease) without any diagnosis or individualized assessment and has also <u>made a record of such disability</u> by mis-classifying the plaintiff as having, a mental or physical impairment that substantially limits one or more major life activities.

Therefore the plaintiff is entitled to the relief sought herein.

The court should be advised that the defendant believes that its legal violations are justified by claiming there is a "pandemic", and doing so without any supporting facts.  This of course is not a legal defense, just like ignorance of the law if not a legal defense.  The plaintiff requests that the court take judicial notice of the official mortality rates of the State of Florida and the United States for the years from 2018, 2019 and 2020 in which the standard deviation is zero, the very definition of a "pandemic".  Either way,  pandemic or not, no laws have changed that would either create any new duty of care or insurable risk for the defendant, and no laws created any new legal duty or obligation for employees of public accommodations to violate the medical privacy rights of anyone.

## JURISDICTION AND VENUE

This court has jurisdiction over this action under Title III of the ADA and 28 U.S.C. §§ 1331 and 1345.  This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202 and authority to grant equitable relief, monetary damages, and civil penalties under 42 U.S.C. § 12188 as implemented under 28 CFR Part 36 (36.101 *et sequitur*).

Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

Plaintiff Ian Gimple resides in Osceola County, Florida and is an individual with a disability within the meaning of Title III of the ADA. The plaintiff was an invitee of the defendant. The plaintiff was also regarded as having or has a physical or mental disability or impairment that substantially limits him from engaging in one or more major life activities as set forth in 29 CFR §1630.2 and 42 U.S.C. §12101.

Defendant SAVER is a public accommodation with its physical place of business in Orange County, Florida. It is a publicly held corporation based in Florida. Defendant has control over, is responsible for, and owns the premises located at 8501 Parkline Boulevard in Orlando, Florida, upon which the incidents giving rise to this complaint occurred.

**STATEMENTS OF FACT**

Defendant is a retail car rental store serving hundreds of patrons each week and provides car rental services via its premises located at 8501 Parkline Boulevard in Orlando, Florida.

The plaintiff is a qualified individual with a disability that substantially limits his ability to engage in one or more major life activities. The plaintiff informed the defendant of the same and the defendant denied and ignored this statement. Plaintiff called the main office number to report discrimination by an employee and was informed that regarding invitees as disabled and then refusing them service based upon disability was the policy of the company. The defendant has unlawfully discriminated against the plaintiff and retaliated against him by terminating his car rental contract based upon disability; threatening arrest or incarceration; and harassing and intimidating the plaintiff in retaliation for plaintiff's attempting to exercise or enjoy his rights under the ADA.

Individuals with disabilities, including the plaintiff, frequently visit the business location of the defendant for these services and products.

Defendant has failed to ensure that its policies and practices permits the enjoyment of access to goods, services, privileges, advantages and accommodations.

On December 7, 2020, plaintiff visited the defendant's location at 8501 Parkline Boulevard at about 9 P.M. to arrange a car rental contract. The clerk A. Anguld asked plain-

tiff to wear a mask. Plaintiff told A. Anguld that plaintiff would rather wait outside until the contract was complete. A. Anguld then said that it was okay for the plaintiff to wait inside. Upon reviewing the contract and discussing it with A. Anguld, plaintiff learned that he could make an adjustment with his insurance company that would save him money on the rental contract. Plaintiff arranged to call his insurance company the next morning to arrange the policy change. Other than this amendment the contract was ready and plaintiff was given possession of the keys and the car.

On December 8, 2020 at 11 a.m. plaintiff returned to SAVER to drop-off proof of amended coverage. A manager named Estevan Ramirez was at the counter he told plaintiff to wear a mask in order to have the contract updated. Plaintiff explained that he has a disability which prevents him from wearing one. Estevan Ramirez replied that plaintiff must leave the store and plaintiff will be refused service because of his disability.

Plaintiff dialed the main office number for the business to report the discrimination. The agent informed plaintiff that defendant's policy is to allow individual managers to decide which customers they will serve based upon disability. Plaintiff asked Estevan Ramirez once more if he will update the contract so that plaintiff can return to driving the car in his possession. Ramirez refused.

Plaintiff then called the local Sheriff to provide assistance. A deputy was assigned to arrive. Plaintiff waited for the arrival of the sheriff on a chair in the store and placed the keys to his rental car near his legs. Ramirez opened the front door and indicated that he wanted plaintiff to wait outside for the sheriff. Plaintiff said he would remain quietly where he was and would do as the sheriff instructed when the sheriff came. Ramirez then reached out and snatched the car keys. Plaintiff had been using the car and had belongings in the car.

Orange County Sheriff Deputy Webster arrived and she spoke with Ramirez before speaking to plaintiff. When she approached plaintiff, Deputy Webster told the plaintiff that he was trespassing and handed him a written warning. Plaintiff said he was not trespassing, because he was an invitee of the business and had a contract for a one-week rental with the company in that office and he had already driven the car to his hotel and back to the office. He also stated that he had not bothered anyone in the office or disrupted the business in any way. Deputy Sheriff Webster stated that plaintiff must leave the property or

face being arrested.  Plaintiff said he wanted his money back and needed to retrieve his be-longings from the car.  He also asked for a ride to the airport.

Deputy Webster handed the plaintiff a receipt showing that Ramirez had reversed the charges to plaintiff's credit card. Deputy Webster told the plaintiff to leave the property im-mediately or he would be arrested. Deputy Webster also said plaintiff must go somewhere else to call a taxi.  Plaintiff called Mears taxi to take him back to the airport which cost $17.70.  Plaintiff was able to rent a car with a different company and noted that he was not asked to wear a mask nor was the clerk who served him wearing a mask.

On February 16, 2021, Plaintiff sent a letter to Orange County Sheriff Mina and oth-ers detailing the incident and asking that Deputy Sheriff Webster review the proper proce-dure regarding trespass violations since plaintiff was an invitee and no evidence of violation was observed.

On January 25, 2021, plaintiff filed an online complaint with CivilRights.Justice.gov record number 49730-TFZ.  On February 25, 2021, plaintiff received an email from the DOJ which stated: "You contacted the Department of Justice on January 26, 2021. After careful review of what you submitted, we have decided not to take any further action on your com-plaint. The complaint number is 49730-TFZ."

On March 15, 2021, Plaintiff filed a complaint with the Florida Commission on Human Relations (hereafter "F.C.H.R.") which asked them to investigate plaintiff's claim of discrimi-nation both for his actual disability which precludes him from wearing a mask and for being regarded as disabled with a contagious disease by the agent for the company.

On June 7, 2021, plaintiff received an email from John Scotese with the F.C.H.R. which included a letter from Mary Smith with F.C.H.R. stating that the plaintiff's complaint was not signed and dated and that a car rental office is not a place of public accommoda-tion. Included in the letter was an offer to amend his complaint.

On June 18, 2021, plaintiff mailed Mary Smith of the F.C.H.R. an amended complaint and explained that he created the original complaint on the website of the F.C.H.R. and noted that he did not see a provision to sign or date the complaint. Plaintiff also noted that according to the information he consulted in the Secretary of State's SunBiz portal and the definition of provided in the ADA 28 CFR 36.104(5),  SAVER, LLC does fall under the defini-tion of a public accommodation.

On July 22, 2021, plaintiff received a letter from F.C.H.R. signed by Cheyanne Cos-tilla informing plaintiff that his case was dismissed and that he has the right to appeal the decision.

Plaintiff re-alleges and incorporates each statement of fact from his affidavit herein. True and correct copies of the written communications between the plaintiff, defendant, Sheriff Deputy Webster and the agencies are included as Exhibit A.

Plaintiff requests that this court take judicial notice of Section 201(h) of the Food, Drug and Cosmetic Act and its Final Guidance titled, "Classification of Products as Drugs and Devices & Additional Product Classification Issues:  Guidance for Industry and FDA Staff", published in September of 2017, in which the Food & Drug Administration defines wearing a mask for health purposes (if there is such a thing) as a medical device and the application of a medical device or contrivance.  A true and correct copy of this is included as Exhibit B.

Plaintiff further requests that the Food & Drug administration has never approved wearing such face masks, but only "authorized" them without any supporting medical or clinical data establishing any medical necessity or efficacy for wearing such contrivances.

Plaintiff further requests that this court take judicial notice of the fact that each and every manufacturer of these face masks disclaim any and all liability for their use.

Plaintiff also requests that this court take judicial notice of the law pertaining to premises liability in the State of Florida and the doctrine of assumption of risk; wherein, the defendant has no duty of care to engage in these practices that violate the law and the med-ical privacy rights (intangible property rights and the right of informed consent) of the plain-tiff.  Moreover, the defendant has no insurable risk for the false presumption that the plaintiff is a direct threat.  To the contrary, defendant's policies violate public health policy as pub-lished in the Florida Pandemic Influenza Benchguide that illustrates the due process re-quirements to impose any public health control measures upon anyone in the state.  Plaintiff requests that the court take judicial notice of the Florida Pandemic Influenza Benchguide.

The plaintiff has suffered harm as a direct and proximate cause of the defendant's policies, practices and conduct.  The defendant has demonstrated and expressed by its policies, practices and conduct, that it fully intends to continue this discriminatory conduct.

1   The plaintiff intends to continue using the services at the defendant's location because he is
2   resident in the same county and has every right to patronize this public accommodation.

3              **VIOLATION OF TITLE III OF THE ADA, 42 U.S.C. §§12181 *et sequitur*.**

4          The statements and allegations contained in the preceding paragraphs are incorpo-
5   rated by reference.

6          Title III of the ADA and its implementing regulation prohibit discrimination on the ba-
7   sis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,
8   advantages, and accommodations of any place of public accommodation by any private en-
9   tity that owns, leases (or leases to), or operates any place of public accommodation. 42
10  U.S.C. § 12182(a) as implemented under 28 CFR Part 36 (36.101 *et sequitur*).

11         Defendant is private entity whose operations affect commerce; they own and/or oper-
12  ate service establishments including but not limited to its retail locations, that provide goods
13  and services to members of the public. 42 U.S.C. §§ 12181(7), 12182(a).  The defendant is
14  a public accommodation as defined under the ADA 28 CFR 36.104(5), "A bakery, grocery
15  store, clothing store, hardware store, shopping center, or other sales or rental establish-
    ment;"

16         Defendant has discriminated and continues to discriminate against the plaintiff, an in-
17  dividual with disabilities, on the basis of disability in the full and equal enjoyment of its
18  goods, services, facilities, privileges, advantages, and accommodations, including denying
19  them the ability to independently shop for consumer goods and services at the defendant's
20  retail locations. 42 U.S.C. §12182(a).

21         Defendant advertises and provides a range of benefits at its retail locations,  includ-
22  ing the sale and rental of consumer goods and services, all of which significantly enhance
23  the ability of people in the community to be conveniently supplied with needed goods and
24  services.  The plaintiff has been denied these benefits; frustrated; and was required to use
25  alternate means to obtain these goods and services which are offered to others, by the
    same means,  without such disabilities.

26
27
28

Specifically, defendant has violated and continues to violate Title III of the Americans with Disabilities Act of 1990 (ADA) and the Americans with Disabilities Act Amendment Act (ADAAA) and its implementing regulations by:

Denying the plaintiff the opportunity to participate in and benefit from the goods, services, privileges, advantages, and accommodations provided through the defendant's facilities at its retail locations, 42 U.S.C. § 12182; and,

Providing the plaintiff an unequal opportunity to participate in or benefit from the goods services, privileges, advantages, and accommodations provided through the defendant's retail locations, 42 U.S.C. § 12182 as implemented under 28 CFR Part 36 (36.101 *et sequitur*); and,

Failing to take the necessary steps to ensure that the plaintiff is not excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services, 42 U.S.C. § 12182 as implemented under 28 CFR Part 36 (36.101 *et sequitur*); and,

The defendant regards the plaintiff as having a disability (contagious disease) without any diagnosis or individualized assessment and has also made a record of such disability by mis-classifying the plaintiff as having, a mental or physical impairment that substantially limits one or more major life activities, in violation of 28 CFR Part 36.105(e)(1), which states:

"(e) Has a record of such an impairment.

(1) An individual has a record of such an impairment if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."

The defendant's employee informed the plaintiff on December 8, 2020, that it (SAVER) would not acknowledge those with disabilities and would make no attempts to provide reasonable modifications even if requested, and that the plaintiff would have to wear a mask or he would be denied services. At that point, plaintiff called to speak with a manager for the reason that this policy clearly violates 28 CFR Part 36.203(c)(1) which states:

§ 36.203 Integrated settings.

(a) General. A public accommodation shall afford goods, services, facilities, privileges, advantages, and accommodations to an individual with a disability in the most integrated setting appropriate to the needs of the individual.

(b) Opportunity to participate. Notwithstanding the existence of separate or different programs or activities provided in accordance with this subpart, a public accommodation shall not deny an individual with a disability an opportunity to participate in such programs or activities that are not separate or different.

(c) Accommodations and services.

(1) Nothing in this part shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit available under this part that such individual chooses not to accept.

(2) Nothing in the Act or this part authorizes the representative or guardian of an individual with a disability to decline food, water, medical treatment, or medical services for that individual.

The plaintiff has thereby suffered an injury in fact, that is, an invasion of a legally protected interest which is specifically established in Title III of the ADA and the allegations herein. The injury suffered by the plaintiff because of the defendant's policies and conduct is actual or imminent and not conjectural or hypothetical. The plaintiff did in fact experience the violations alleged herein. These facts establish without question the causal connection between the injury and the alleged conduct which caused the injury. The defendant has retaliated against the plaintiff by threatening him with being cited for trespass or disorderly conduct, two unrelated crimes for which there would be no evidence of any violation, because of the plaintiff's exercise of rights that are protected by the ADA. It is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision granting the relief sought by the plaintiff.

In the ADA context, "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.' Similarly, a plaintiff who is threatened with harm in the future because of existing

or imminently threatened non-compliance with the ADA suffers 'imminent injury.'"   Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1138(9th Cir. 2002)

The injury is concrete and particularized and it is actual and imminent.  The injury alleged in the complaint, including the pleading and exhibits, clearly sets forth a set of facts that actually occurred and are not conjectural or hypothetical.  The injury described therein is at least fairly traceable to the challenged action, conduct and policies of the defendant.

The harm (injury) already suffered by the plaintiff includes, but is not limited to, having to waive his medical privacy rights, and submit to a medical intervention without the benefits of informed consent, and being regarded as if he has a contagious disease without any individualized assessment according to any medical or scientific standards.  Once violated, these rights cannot be recovered.  The medical privacy rights are the plaintiff's intangible property rights which are not required to be waived as a condition of being an invitee at a public accommodation (renting a car at the defendant's business location).

Defendant's policies demonstrate soundly and convincingly, that it's policies inflict future harm against those with disabilities or invisible disabilities will continue and that the defendant fully intends to retaliate against those with disabilities by threatening them with refusing services and incarceration because of their exercise of rights protected by the ADA.

Therefore the defendant has shown clearly that it will continue to cause present and future harm to those who exercise their rights protected by the ADA.

The Defendant has regarded the Plaintiff as having a disability by treating him as an infectious threat even while failing to perform a proper assessment.  Defendant failed to fulfill its legal obligation to perform an individualized assessment.  Furthermore, once the Plaintiff invokes his rights under the ADA it is coercion, retaliation, intimidation and prohibited by law for the Defendant to ask the Plaintiff to reveal or discuss his disabilities.  It is not the duty of the defendant to diagnose, rather it is the duty of the defendant to offer suitable accommodations when requested.

The ADA places the burden on the Defense to prove that it did not discriminate, coerce, harass or retaliate against the Plaintiff who claimed his rights under the ADA.  The ADA does not ask the defendant to diagnose the Plaintiff, rather the ADA asks the Defen-

- 11 -

dant to accommodate without discrimination.  The moment the Plaintiff invoked his rights under the ADA it becomes the burden of the Defendant to offer suitable accommodation.

Not only did the defendant deny services to the plaintiff because of his disability, it retaliated against him by harassing, threatening him with incarceration (or being cited for the crime of trespass) and then denying service by the defendant's actions to snatch the keys and to refuse to update his contract or honor the contract, in violation of the ADA, as set forth in 28 CFR Part 36.206(a), (b) and (c), which states:

§ 36.206 Retaliation or coercion.

(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

(c) Illustrations of conduct prohibited by this section include, but are not limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;

(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

- 12 -

(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

Such discrimination persists notwithstanding the existence of readily available, well-established, accommodations, including but not limited to refraining from engaging with the plaintiff in any conversation pertaining to the application of such mitigation measures.

The plaintiff has "disability of record", "actual disability" and was "regarded as" disabled.  The defendant failed to provide equal accommodations to the plaintiff.

Defendant's new policies continue the same policies of violating Title III of the ADA by refusing to make reasonable modifications and perpetuating a policy of denying and ignoring the needs of those patrons with disabilities. Defendant continues to regard some patrons as having a disability (contagious disease) without performing an individualized assessment.

The plaintiff has commenced this action based on reasonable cause to believe that defendant is engaged in a pattern or practice of discrimination and that the plaintiff has been discriminated against and that such discrimination raises issues of general public importance. 42 U.S.C. § 12188 as implemented under 28 CFR Part 36 (36.101 *et sequitur*).

The plaintiff seeks declaratory and injunctive relief, monetary damages, and civil penalties against defendant.

As a result of Defendant's actions and/or omissions, the plaintiff has experienced frustration, additional burden, and marginalization; and is now unable to receive services; and has been required to find alternative methods.

In addition to unlawfully denying the plaintiff the same and equal enjoyment to of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, the defendant retaliated against the plaintiff by:

• harassing the plaintiff about submitting to the mitigation measures and examinations and other health control measures, in violation of 28 CFR Part 36.203(c)(1), even though the defendant was duly advised by the plaintiff that the plaintiff is not subject to any health control measures by any court orders, or required to accept any mitigation measure,

- 13 -

and that the defendant was not empowered by any court order, law or other legal duty (even any conceivable duty of care) to impose such interventions, examinations or control measures upon the plaintiff; and,

•  threatening the plaintiff with being falsely cited, arrested or incarcerated for unrelated crimes such as trespass or disorderly conduct; and,

•  allowing other patrons to attack, threaten or verbally ridicule and abuse the plaintiffs in violation of the defendant's duty of care; and,

•  harassing, coercing or intimidating the plaintiff because of his disabilities; and,

•  threatening the plaintiff with public humiliation and exclusion because of his disability; and,

•  refusing to honor the contract and terminating his contract in violation of 28 CFR Part 36.206 for the sole reason that he had been expressing his objections to the defendant's new policies.  This is the same as terminating the contract of someone for the sole reason that he is not married, or that his mobility is restricted to a wheel chair.

By the conduct set forth in the preceding paragraphs, there is reasonable cause to believe that Defendant has:

•  engaged in a pattern or practice of discrimination, in violation of 42 U.S.C. § 12188 as implemented under 28 CFR Part 36 (36.101 *et sequitur*); and,

•  discriminated against the plaintiff and such discrimination raises an issue of general public importance, in violation of 42 U.S.C. § 12188 as implemented under 28 CFR Part 36 (36.101 *et sequitur*) and the plaintiff's private right of action.

•  the defendant wrongfully and ignorantly expressed the attitude toward the plaintiff as if the plaintiff is a direct threat to others, yet has never complied with the individual assessment criteria, to wit:

28 CFR Part 36.208:

"(b) In determining whether an individual poses a direct threat to the health or safety of others,

a public accommodation must make an **individualized assessment**,

- 14 -

1      based on reasonable judgment that relies on current medical knowledge or on

2      the best available objective evidence,

3      to ascertain: The nature, duration, and severity of the risk;

4      the probability that the potential injury will actually occur;

5      and whether reasonable modifications of policies, practices, or procedures or

6      the provision of auxiliary aids or services will mitigate the risk."

7      **Plaintiff demands a jury trial.**

8      WHEREFORE, plaintiff demands judgment against the defendant and that the court

9  declare that Defendant's discriminatory actions and/or omissions as set forth in this Com-

10  plaint violate Title III of the ADA, 42 U.S.C. §§ 12181-12189 as implemented under 28 CFR

11  Part 36 (36.101 *et sequitur*);

12      • And an order enjoining the defendant, along with its officers, agents, and employ-

13  ees, and all others in active concert or participation with them, from:

14      • Engaging in discriminatory acts and/or omissions against individuals with disabili-

15  ties;

16      • and an order enjoining the defendant from implementing practices and policies in a

17  manner that is inaccessible to individuals with disabilities within the meaning of Title III of

18  the ADA, 42 U.S.C. §§ 12181-12189 as implemented under 28 CFR Part 36 (36.101 *et se-*

19  *quitur*);

20      • And ordering defendants to:

21      • Comply with the requirements of Title III of the ADA, 42 U.S.C. §§ 12181-12189 as

22  implemented under 28 CFR Part 36 (36.101 *et sequitur*); and,

23      • Provide appropriate auxiliary aids and services; modify policies, practices, and pro-

24  cedures; and/or require alternative methods to ensure the accessibility of its premises and

25  services to individuals with disabilities, 42 U.S.C. §12188(a) *et sequitur*; and,

26      • Take such affirmative steps as may be necessary to restore, as nearly as practica-

27  ble, each identifiable victim of the Defendant's discriminatory conduct to the position that he

28  or she would have been in but for the Defendant's conduct; and,

• Take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct and to eliminate, to the extent practicable, the effects of such conduct; and,

• Award monetary damages to aggrieved persons, in an appropriate amount for injuries suffered as the result of Defendant's failure to comply with the requirements of Title III of the ADA, 42 U.S.C. §§12181-12189 as implemented under 28 CFR Part 36 (36.101 *et sequitur*); and,

• Assess a civil penalty against the Defendant in an amount authorized by 42 U.S.C. §12188(a) *et sequitur* to vindicate the public interest; and,

• Order such other relief as the interests of justice may require.

DATED this 8th day of ~~October~~, 2021.  November

Ian Gimple, Plaintiff

- 16 -